

14 CV 5831
JUDGE DANIELS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENOMMA LAB USA, INC.

           Plaintiff,

v.

VENUS AMERICA CORPORATION,

           Defendant.

Civil Action No.:

**COMPLAINT**



Plaintiff Genomma Lab USA, Inc. ("Genomma"), by its undersigned attorneys, Kent, Beatty & Gordon, LLP, alleges as follows for its complaint against Defendant Venus America Corporation ("Venus"):

### NATURE OF THE ACTION

1. This is an action for breach of an Advertising Services Agreement pursuant to which Venus was required to sell Genomma advertising on certain Spanish-language television networks at "value cost, without adding any fee or other charge." After more than a year of purchasing such advertising from Venus, Genomma discovered that Venus had been significantly inflating its invoices, charging far in excess of its cost. Genomma accordingly brings this action to recover its overpayments to Venus, which, upon information and belief, total more than $10 million.

### THE PARTIES, JURISDICTION AND VENUE

2. Plaintiff Genomma is a corporation formed under the laws of Texas with its principal place of business in Houston, Texas.

3.	Defendant Venus is a corporation formed under the laws of Florida with its principal place of business in Miami, Florida. Venus was incorporated in 2008 under the name Prestige Universal U.S.A. Inc.; in 2010, the corporation changed its name to Venus America Corporation.

4.	This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because Genomma and Venus are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.	Venue is proper in this district because the parties' Advertising Services Agreement, which is governed by New York law, provides for exclusive jurisdiction and venue in the courts located in the borough of Manhattan.

## FACTS

6.	Genomma is the United States subsidiary of Genomma Lab Internacional, S.A.B. de C.V. ("GLI"), a publicly-traded company in Mexico. GLI is in the business of developing, marketing and selling pharmaceutical, personal care and cosmetics products, with a primary focus on the Spanish-speaking market. As such, it purchases large amounts of advertising on Spanish-language television networks.

7.	In 2012, GLI began purchasing advertising air time on certain Spanish-language networks through Venus, a Florida-based marketing business. Venus had represented to GLI that it could obtain highly favorable rates for air time in the United States through its connections with the networks.

8.	In July 2012, GLI and Venus entered into an Advertising Services Agreement setting forth the terms by which GLI could purchase air time from Venus. Very shortly thereafter, however, Venus and GLI began renegotiating the terms of their relationship, and

eventually agreed on a new arrangement whereby Venus would sell the advertising at its cost in exchange for a percentage of Genomma's profits from its product sales.

9. Accordingly, on January 3, 2013, Genomma and Venus entered into a new Advertising Services Agreement (the "Agreement"). The Agreement expressly provides that it "contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements or understandings, whether written or oral, with respect thereto."

10. The Agreement provides that Venus

> directly or through its affiliates, shall provide or cause to provide to Genomma or to the Genomma affiliate designated by Genomma, amounts of advertising on the Univision and Telefutura network and/or television broadcast outlets affiliated therewith and, subject to Section 1.4 below, on any other network agreed upon by the parties hereto (the "**Networks**") in the Territory, for the advertising and telemarketing of over-the-counter pharmaceutical, personal care, dietary supplement and cosmetic products marketed by Genomma (the "**Products**") … .

11. The consideration for this advertising was set forth in Section 3 of the Agreement, which provides as follows:

> Consideration.  (a) In consideration of the advertising provided hereunder, Genomma shall pay to [Venus] the rates set forth in the corresponding Confirmed Service Order (the "Consideration"), and under the terms of payment agreed upon by the Parties in said Confirmed Service Order.  The Parties hereby expressly agree that the rates to be charged by [Venus] to Genomma as Consideration shall be at value cost, without adding any fee or other charge. Each payment shall be payable by transfer of immediately available funds to the account indicated by [Venus] in writing to Genomma in the terms and conditions set forth in the Confirmed Service Order.

12. In accordance with the Agreement, Genomma purchased advertising air time from Venus totaling approximately $29 million.

13. In late 2013 and early 2014, Genomma had several discussions with the networks about purchasing air time directly. Through these discussions, Genomma discovered that the cost of such advertising was far less than the amounts Venus had been charging Genomma.

14. Indeed, based on information Genomma has obtained about the true cost of advertising, Genomma estimates that it was overcharged by more than $10 million, net of any set offs. For example, after terminating the Agreement effective March 2014, Genomma began purchasing air time directly from Univision at rates that were markedly less than what Venus had been charging for equivalent air time. And, to compound matters, upon information and belief, Venus was actually purchasing air time for substantially less than Genomma.

15. Accordingly, on March 15, 2014, Genomma wrote to Venus to request documentation supporting the amounts Venus had charged. Venus provided no information in response to this request.

16. On June 10, 2014, Genomma's counsel wrote to Venus to advise that Genomma believed it had charged far more than Venus's cost, and demanded access to Venus's financial books and records to determine the full extent of the overcharge.

17. By letter dated June 17, 2014, counsel for Venus refused to provide any financial information, on the spurious ground that Genomma's payments to Venus had been wired from a GLI bank account, and thus, according to counsel, "Venus America Corporation has never sent a single invoice to Genomma Lab USA, Inc.; nor has there ever been any payment whatsoever to Venus America Corporation from Genomma Lab USA, Inc." Counsel's letter conspicuously failed to deny that Venus had, in fact, charged far more than its actual cost. This action followed.

## CLAIM FOR RELIEF
(Breach of Contract)

18. Genomma incorporates by reference the allegations of paragraphs 1 through 17.

19. Pursuant to the Advertising Services Agreement dated January 3, 2013, Venus was required to sell advertising to Genomma at "value cost, without adding any fee or other charge."

20. Upon information and belief, Venus committed a breach by charging Genomma far in excess of Venus's actual cost.

21. Genomma is therefore entitled to damages equal to the difference between the actual cost and the inflated amounts that Venus charged. Upon information and belief, Venus overcharged Genomma by more than $10 million, net of any set offs.

## PRAYER FOR RELIEF

**WHEREFORE**, Genomma demands Judgment against Venus for damages in an amount to be determined at trial, plus prejudgment interest, costs, disbursements and attorneys' fees, as well as any other relief the Court deems proper.

Dated: New York, New York
July 29, 2014

KENT, BEATTY & GORDON, LLP

_____
Jack A. Gordon
(jag@kbg-law.com)
Joshua B. Katz
(jbk@kbg-law.com)
425 Park Avenue, The Penthouse
New York, New York 10022
(212) 421-4300

*Attorneys for Plaintiff*
*Genomma Lab USA, Inc.*

5