UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENOMMA LAB USA, INC.

                Plaintiff,

           v.

VENUS AMERICA CORPORATION,
CARLOS CARRUITERO and PRESTIGE
UNIVERSAL MEDIA LLC,

                Defendants.

14 Civ. 5831 (GBD) (GWG)

**AMENDED COMPLAINT**

      Plaintiff Genomma Lab USA, Inc. ("Genomma"), by its undersigned attorneys, Kent, Beatty & Gordon, LLP, alleges as follows for its Amended Complaint against Defendants Venus America Corporation ("Venus"), Carlos Carruitero ("Carruitero") and Prestige Universal Media LLC ("Prestige Media"):

**NATURE OF THE ACTION**

      1.     This is an action for breach of an Advertising Services Agreement pursuant to which Venus was required to sell Genomma advertising on certain Spanish-language television networks at "value cost, without adding any fee or other charge." After more than a year of purchasing such advertising from Venus, Genomma discovered that Venus had been significantly inflating its invoices, charging far in excess of its cost. Genomma accordingly brings this action to recover its overpayments to Venus, which total more than $15 million.

      2.     At the same time that Venus was overcharging Genomma, defendant Carruitero used his domination and control of Venus to strip it of the funds necessary to repay Genomma, and to transfer that money for the benefit of his family members and other business ventures,

including Prestige Media. This action thus seeks to pierce the corporate veil and undo the fraudulent transfers orchestrated by Carruitero, in order to satisfy any judgment that Genomma obtains on its breach of contract claim.

## THE PARTIES, JURISDICTION AND VENUE

3. Plaintiff Genomma is a corporation formed under the laws of Texas with its principal place of business in Houston, Texas.

4. Defendant Venus is a corporation formed under the laws of Florida with its principal place of business in Miami, Florida. Venus was incorporated in 2008 under the name Prestige Universal U.S.A. Inc.; in 2010, the corporation changed its name to Venus America Corporation.

5. Upon information and belief, defendant Carruitero is a United States citizen domiciled in Florida.

6. Upon information and belief, defendant Prestige Media is a limited liability company formed under the laws of Florida, the only member of which is Carruitero.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because Genomma is a citizen of Texas, Venus, Carruitero and Prestige Media are citizens of Florida, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. Venue is proper in this district because the Advertising Services Agreement, which is governed by New York law, provides for exclusive jurisdiction and venue in the courts located in the borough of Manhattan.

## FACTS

9. Genomma is the United States subsidiary of Genomma Lab Internacional, S.A.B. de C.V. ("GLI"), a publicly-traded company in Mexico. GLI is in the business of developing,

marketing and selling pharmaceutical, personal care and cosmetics products, with a primary focus on the Spanish-speaking market. As such, it purchases large amounts of advertising on Spanish-language television networks.

10. In mid-2012, Genomma was introduced to Carruitero, a Miami-based businessman who claimed to have a longstanding relationship with Univision that allowed him to purchase advertising air time at very favorable prices.

11. In July 2012, Carruitero and Genomma agreed to a short-term test under which Carruitero would sell Genomma three months of air time for $5 million. This arrangement was memorialized in an Advertising Services Agreement dated as of July 2, 2012, and extended for an additional month by amendment dated November 7, 2012.

12. After conducting this initial test, Genomma proposed a new arrangement under which Carruitero would sell the air time at cost in exchange for a percentage of Genomma's sales. Carruitero accepted this proposal, and in December 2012, Genomma and Venus executed a new Advertising Services Agreement effective as of January 3, 2013 (the "January 2013 Agreement").

13. The January 2013 Agreement expressly provides that it "contains the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements or understandings, whether written or oral, with respect thereto."

14. The January 2013 Agreement further provides that Venus

> directly or through its affiliates, shall provide or cause to provide to Genomma or to the Genomma affiliate designated by Genomma, amounts of advertising on the Univision and Telefutura network and/or television broadcast outlets affiliated therewith and, subject to Section 1.4 below, on any other network agreed upon by the parties hereto (the "**Networks**") in the Territory, for the advertising and

telemarketing of over-the-counter pharmaceutical, personal care, dietary supplement and cosmetic products marketed by Genomma (the "**Products**") … .

15. The consideration for this advertising was set forth in Sections 3 and 4 of the January 2013 Agreement, which provide as follows:

> Consideration.  (a) In consideration of the advertising provided hereunder, Genomma shall pay to [Venus] the rates set forth in the corresponding Confirmed Service Order (the "Consideration"), and under the terms of payment agreed upon by the Parties in said Confirmed Service Order.  The Parties hereby expressly agree that the rates to be charged by [Venus] to Genomma as Consideration shall be at value cost, without adding any fee or other charge. Each payment shall be payable by transfer of immediately available funds to the account indicated by [Venus] in writing to Genomma in the terms and conditions set forth in the Confirmed Service Order.  …
>
> Additional Covenants. In consideration of the Subnetwork Advertising and Unwire Advertising services to be rendered hereunder, during the term of this Agreement (a) Genomma shall pay to [Venus] an additional amount equivalent to the 10% (ten per cent) of the net sales of the Products marketed and retailed under the Subnetwork Advertising and Unwire Advertising and which feature only those trademarks proprietary to Genomma in the Territory. For purposes of Section 4. "net sales" shall mean the sale price of the Products minus the costs of goods, and the Consideration charged by [Venus] pursuant to the terms hereunder; (b) Genomma agrees to appoint Mr. Carlos Carruitero as a member of the Board of Managers of Genomma.

16. Venus breached the January 2013 Agreement by charging Genomma far more than the cost of the advertising.  Between January 3, 2013 and March 15, 2014 (when Genomma terminated the contract), Venus overcharged Genomma by at least $15,946,804.

17. Because of these overcharges, Genomma's "net sales" were negative during the term of the January 2013 Agreement.

18. Carruitero completely dominated and controlled Venus in connection with the negotiation and performance of the January 2013 Agreement.  Carruitero negotiated and executed that contract on behalf of Venus without consulting either Flor Osorio or Alejandra Orrego, the nominal officers and directors of Venus.  At her deposition, Orrego testified that

Carruitero never explained the terms of the agreement to her, and that, despite being the president of Venus, she felt no responsibility to familiarize herself with the terms. And Osorio testified that she was totally unaware that Venus had ever agreed to sell air time to Genomma. Indeed, Carruitero viewed Venus's role in the contract as essentially irrelevant, testifying, "it was me, it wasn't Venus, because I was negotiating on a personal basis."

19. After Carruitero agreed to start selling the air time to Genomma at cost, he directed Univision to begin invoicing Prestige Media instead of Venus, and directed Venus to remit a substantial portion of Genomma's payments to Prestige Media. In 2013, Genomma paid Venus a total of $23,106,353, and of this sum, Venus remitted at least $9,299,102.69 to Prestige Media via 51 different checks. Orrego signed each of these 51 checks on behalf of Venus at the behest of Carruitero, but testified that she had no idea what the checks were for or why she was signing them. She explained, "it's enough for me to be told that Carlos [Carruitero] has authorized it from the advertising side for me to sign it."

20. At all relevant times, Prestige Media has been a shell company with no employees and no revenues other than the monies that Venus fraudulently transferred. Venus received no consideration for the $9,299,102.69 it transferred to Prestige Media.

21. Upon information and belief, other monies were also fraudulently transferred from Venus during the period January 3, 2013 through the present.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract/Veil Piercing)

22. Genomma incorporates by reference the allegations of paragraphs 1 through 21.

23. Pursuant to the January 2013 Agreement, Venus was required to sell advertising to Genomma at "value cost, without adding any fee or other charge."

24. Venus breached by charging Genomma far in excess of the cost of the advertising.

5

25. Genomma is therefore entitled to damages equal to the difference between the actual cost and the inflated amounts that Venus charged. Venus overcharged Genomma by at least $15,946,804, net of any set offs.

26. Carruitero completely dominated and controlled Venus and Prestige Media. Defendants failed to observe corporate formalities, intermingled Venus's funds with Prestige Media's and Carruitero's other businesses, and stripped Venus of almost all of the $15,946,804 that Genomma overpaid for air time under the January 2013 Agreement. Upon information and belief, Carruitero has further stripped Prestige Media of the $9,299,102.69 that it received from Venus, and used those funds to finance personal and unrelated business expenditures.

27. As a result, the corporate veil should be pierced and Carruitero and Prestige Media should be personally liable for the damages that Venus owes Genomma for breaching the contract.

## SECOND CLAIM FOR RELIEF
(Recovery of Fraudulent Transfers)

28. Genomma repeats paragraphs 1 through 27 as if fully set forth herein.

29. Since January 3, 2013, Genomma has been a creditor of Venus by virtue of having overpaid Venus at least $15,946,804 from January 3, 2013 and March 15, 2014. With interest, Venus now owes Genomma more than $20 million.

30. Since January 3, 2013, Venus has transferred monies and other assets, including almost all of the $15,946,804 it received from Genomma, to various persons and entities with the actual intent to hinder, delay or defraud Genomma, or without receiving a reasonably equivalent value in exchange. These fraudulent transfers include the $9,299,102.69 transferred to Prestige Media, and all other monies transferred to Carruitero or his family members or other business interests.

6

31. These fraudulent transfers left Venus with insufficient assets to repay the more than $20 million owed to Genomma.

32. Genomma is entitled to a judgment setting aside each and every one of these fraudulent transfers, or awarding money damages equal to the value of the fraudulently transferred property.

## PRAYER FOR RELIEF

**WHEREFORE**, Genomma demands Judgment against Defendants (1) awarding damages in an amount to be determined at trial but in no event less than $15,946,804, plus interest; (2) declaring that Venus, Carruitero and Prestige Media are alter egos and jointly and severally liable for all monies owed to Genomma; (3) setting aside any and all fraudulent transfers; and (4) awarding Genomma any other relief deemed proper, including costs, disbursements and attorneys' fees.

Dated: New York, New York
August 24, 2017

KENT, BEATTY & GORDON, LLP

/s/Joshua B. Katz
Jack A. Gordon
Joshua B. Katz
Brian C. Avello
Eleven Times Square
New York, New York 10036
(212) 421-4300
jbk@kbg-law.com

*Attorneys for Plaintiff*
*Genomma Lab USA, Inc.*